**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMANDA LEIGH DOEHRER<br>2027 3rd Avenue<br>Apartment 1,<br>Altoona, PA 16602 | CIVIL ACTION<br><br>No. __3:21-cv-114_____ |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| PEERSTAR, LLC<br>2900 Plank Road, Suite 8<br>Altoona, PA 16601 | |
| Defendant. | |

## CIVIL ACTION COMPLAINT

The Plaintiff, Amanda Leigh Doehrer by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. The Plaintiff has initiated this action against Peerstar, LLC (hereinafter "Defendant") her former employer, for violations of the Family and Medical Leave Act (hereinafter "FMLA") and other applicable federal and state law.

### II. The Parties

2. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

3. The Plaintiff, Amanda Leigh Doehrer (hereinafter "Plaintiff"), is an adult individual currently residing at the above address.

4. The Defendant, Peerstar, LLC is a Pennsylvania Limited Liability Company located at 214 College Park Plaza, Johnstown PA 15904 in Cambria County

5. At all times relevant hereto, the Defendant acted by and through its agents, servants and employees, each of whom acted within the scope of his or her job duties.

6. Defendant is an "employer" within the meaning of the Family Medical Leave Act of 1993 because it is engaged in an industry affecting commerce and because it maintains or maintained fifty (50) or more employees within seventy-five miles of the Plaintiff's work site for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

### III.  Jurisdiction and Venue

7. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if set forth at length.

8. The Court may properly maintain personal jurisdiction over the Defendant because the Defendant's contacts with this state and this judicial district are sufficient to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

9. The United States District Court for the Western District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because this action arises under the laws of the United States.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Defendants are located in and conduct business in this

judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (the Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein.)

### IV.    Factual Background

12. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff began working for Defendant in October 14, 2018

14. Plaintiff created a position of Assistant Regional Director.

15. Defendant provided the Plaintiff with an approved leave from work to have surgery on her neck effective December 7, 2020.

16. Plaintiff continually communicated with the Defendant regarding her health and recovery status and possible return dates.

17. On December 30, 2021, Plaintiff was notified by email that she needed to attend a mandatory meeting to discuss her status and updates with Defendant's HR Director, Samantha Longenencker and Plaintiff's immediate supervisor Christine Butterbaugh.

18. This meeting was scheduled for January 4, 2021, at 9:30 am.

19. Plaintiff was informed, at that meeting, that in order for her to return to her position, following her surgery, she needed to return to work by February 8, 2021.

20. Further, she was required to provide an update on her recovery every Monday until she returned to work.

21. In addition, she was told at another meeting would be necessary, prior to her return, in order to get her back to active status and re-enroll her in the system.

22. Finally she was instructed that she would be unable to return without a doctor's note clearing her for full duties, with no restrictions.

23. Plaintiff had her final follow up appointment with her neurosurgeon on February 3, 2021.

24. Because she was certain she would be cleared to return to work after that appointment, she scheduled her obligatory return meeting for February 4, 2021, at 11am.

25. Plaintiff's doctor cleared her to return to full duty effective February 8, 2021.

26. On February 3, 2021, Plaintiff emailed to the HR Director a doctor's letter permitting her to return.

27. At Plaintiff's return from Leave of Absence meeting, the HR director stated she had not yet received the doctor's letter.

28. Plaintiff then immediately re-forwarded it to her.

29. Immediately thereafter, Plaintiff was told she was being removed from her position as the Assistant Regional Director effective February 8, 2021.

30. Since that job would not now be available to her, Defendant offered her a job as a CPS (Certified Peer Specialist).

31. The CPS position was of the one she had, when she was first employed by the Defendant.

32. Defendant offered the Plaintiff starting pay in an amount of $12 an hour.

33. Plaintiff asked if her pay rate would be any higher to reflect her time and experience working with the Defendant.

34. Plaintiff was informed the HR Director would have to discuss that issue with Elissa Nulton, the CEO,.

35. As an Assistant Regional Director, Plaintiff was being paid $34,000 a year for time.

36. Notably, a CPS position does not guarantee 40 hours a week because clients frequently cancel or need different schedules.

37. Plaintiff also asked for some time to consider their offer and Defendant requested that she informed him the next day, February 5, 2021.

38. Defendant stated they would memorialize the new offer in writing before the Plaintiff signed it.

39. Later that day, Plaintiff sent the HR Director an email confirming that her understanding was, she was being removed from her ARD position and offered the CPS position effective February 8, 2021.

40. Plaintiff requested the offer letter, so she could consider it and sign it if she accepted.

41. Plaintiff however, received no response to that request either that day or the next,

42. On February 5, 2021, on the day that Plaintiff was required to give her answer, as to whether she would accept the CPS position, she still had not received a written offer letter.

43. That same day she found, at 6:00 PM, she had been locked out of work email.

44. Further her password no longer worked.

45. Plaintiff sent another email that evening, from her personal email account, asking for the same information as before, regarding the job and the job offer.

46. She also informed Defendant that plus would was not working, and she had been locked out of the Defendant's email.

47. Plaintiff later received an email to her personal account from Samantha Longenecker that Defendant had fixed her password.

48. Eventually, Plaintiff was able to use this new password to access her email.

49. However, there were still no emails in either her work or personal account answering her questions neither was there any copy of the offer letter.

50. Also, had been further denied access to the record software 'Credible' through which employee information, documents and caseloads can be viewed.

51. On December 3, 2021, days before the Plaintiff went on leave, Defendant promoted a co-worker to the title of Supervisor Manager and her duties included many of the substantial duties, previously handled by the Plaintiff in her capacity as Assistant Regional Director.

52. Prior to taking my leave in the beginning of November, information about one the CPS's the Plaintiff directly supervised was brought to her attention.

53. A member of the mobile crisis team contacted the Plaintiff to report one of the peers (clients) the Defendant serves was on the verge of a mental breakdown due to the actions of their CPS.

54. She reported that this CPS was illegally taking controlled substances and, while working, offering them to her peer.

55. Further, this CPS would take this peer to another peer's home in a different County.

56. This conduct clearly indicated that the CPS was double billing Medicaid.

57. Plaintiff immediately brought this to the attention of Lori Miller, Defendant's Compliance Officer.

58. Plaintiff also reached out to the peer to get him reassigned.

59. The peer provided details that further validated his story.

60. He knew information and names of peers that this CPS had with him.

4811-9644-9264, v. 4

61. This information clearly provided indicated at the CPS had violated HIPPA laws.

62. When the Plaintiff discussed how her concerns with the Compliance Officer, her priority was to find reasons why this peer was not credible as a witness.

63. Therefore, the CPS was suspended for approximately two (2) weeks while Defendant investigated.

64. The Peer then returned to work with no disciplinary actions and was assigned new peers to replace the ones he lost.

65. Notably, on the day that Plaintiff's medical leave began, December 7, 2021, the Compliance Officer issued an updated code of conduct which included a policy that CPSs' were not to be under the influence of any controlled substances when working with peers, even if those controlled substances were prescribed.

### Count I

### WRONGFUL DISCHARGE
### (PLAINTIFF'S OBJECTIONS TO A COURSE OF CONDUCT BY DEFENDANT THAT WAS PLAINLY ILLEGAL)

66. The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

67. It is submitted that a public policy exception to the at will rule exists when a Plaintiff objects to a course of action that the employer is taking that is clearly illegal." *Kelly v. Ret. Pension Plan for Certain Home Office, Managerial and Other Employees of Provident Mutual*, 73 Fed. Appx. 543, 544 (3d Cir. 2003); *see also Clark v. Modern Group Ltd.*, 9 F.3d 321, 330 (3d Cir. 1993).

68. In this case, the Plaintiffs objected to the clear violations of Federal and State statutes and regulations as set forth in detail hereinabove.

69. As a result of the termination of her employment by Defendant, Plaintiffs have incurred damages including but not limited to lost wages and benefits, lost employment opportunities, lost training, pain and suffering, and other damages, all of which are continuing and ongoing.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant for compensatory and punitive damages.

### Count II
### Family Medical Leave Act

70. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

71. The Plaintiff is an "eligible employee" within the meaning of the FMLA because she was:

   a. Employed by Defendant for a period of at least twelve (12) months; and

   b. Worked at least 1,250 hours in the twelve-month (12) period immediately preceding her termination.

72. The Plaintiff was entitled to take leave pursuant to the FMLA to treat her post partum depression.

73. The foregoing conduct by the Defendant, in restraining, denying and interfering with the Plaintiff in the exercise of her rights pursuant to FMLA, constitutes violation of the FMLA.

74. As a result of the Defendant's violations of the FMLA, the Plaintiff has suffered damages as set forth herein.

4811-9644-9264, v. 4

***WHEREFORE***, the Plaintiff seeks the damages set forth in the *Ad Damnum* clause of this Complaint, *infra*.

### Count III
### Family Medical Leave Act – Retaliation

75. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

76. The Plaintiff is an "eligible employee" within the meaning of the FMLA because she was:

   a. Employed by Defendant for a period of at least twelve (12) months; and

   b. Worked at least 1,250 hours in the twelve-month (12) period immediately preceding her termination.

77. The Plaintiff took take leave pursuant to the FMLA for pregnancy and her postpartum depression.

78. After she returned to work, the Defendant refused to return her to the same position. The foregoing conduct by the Defendant constitutes retaliation by Defendant because Plaintiff exercised her rights under the FMLA.

79. As a result of the Defendant's violations of the FMLA, the Plaintiff has suffered damages as set forth herein.

***WHEREFORE***, the Plaintiff seeks the damages set forth in the *Ad Damnum* clause of this Complaint, *infra*.

### *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court enter judgment in her favor and against the Defendants and that it enter an Order as follows:

   a. The Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating and retaliating against employees based on the

Family Medical Leave Act, and are to be ordered to promulgate an effective policy against such discrimination and retaliation;

b. The Defendant is to compensate the Plaintiff, reimburse the Plaintiff and to make the Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendant's unlawful actions, including but not limited to, back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pensions and seniority. The Plaintiff should be accorded those benefits unlawfully withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendant until the date of the verdict;

c. The Plaintiff is to be awarded actual damages;

d. The Plaintiff is to be awarded actual damages, as well as damages for the pain and suffering and humiliation caused to her by the Defendants' actions;

e. The Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish the Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter the Defendant or any other employees from engaging in such misconduct in the future;

f. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

g. The Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

h. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure the Defendants do not engage in prohibited retaliation against the Plaintiff or other witnesses to this action;

i. The Court is to maintain jurisdiction over this action after verdict to ensure compliance with its orders therein.

- 11 -

                Respectfully submitted,

                **KOLMAN LAW**

By:   /s/ Timothy M. Kolman, Esquire
         Timothy M. Kolman, Esquire
         Attorney for Plaintiff
         414 Hulmeville Avenue
         Penndel, PA 19047
         (215) 750-3134

Dated: June 28, 2021